**LITE DEPALMA GREENBERG, LLC**
Joseph J. DePalma
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg@litedepalma.com
scruzhodge@litedepalma.com

*Attorneys for Plaintiff*

[*Additional counsel on signature page*]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARK NAPIER, individually, and on behalf of all others similarly situated, | Civil Action No. |
| *Plaintiff*, | |
| v. | **CLASS ACTION COMPLAINT** |
| FORD MOTOR COMPANY, | **DEMAND FOR JURY TRIAL** |
| *Defendant*. | |

Plaintiff Mark Napier, residing at 4 Exeter Place, Cinnaminson, New Jersey 08077, individually and on behalf of the below-defined nationwide and statewide classes he seeks to represent (collectively, the "Class"), by and through his undersigned counsel, hereby alleges against Defendant Ford Motor Company ("Ford") as follows:

## NATURE OF THE ACTION

1.     This is a class action brought by Plaintiff on behalf of himself and a class of current and former owners or lessees of model year 2017 through 2019 Ford automobiles,

including the 2017 Ford Expedition, that were marketed and sold with false fuel economy ratings (collectively "Class Vehicles").

2.    Ford represented to Plaintiff and Class members that the Class Vehicles had achieved specific miles-per-gallon ("MPG") estimates. Ford concealed that its Environmental Protection Agency ("EPA") fuel economy testing was inadequate, which resulted in Class Vehicles with overstated MPG fuel economy ratings.  On February 21, 2019, Ford announced that EPA fuel economy testing results were not accurate and, as a result, that the Class Vehicles' fuel economy are overstated.

3.    Fuel economy is measured under controlled conditions in a laboratory using a series of tests specified by federal law.  Manufacturers test their own vehicles and report the results to the EPA.[1]  Ford's fuel economy testing was insufficient and flawed and not in compliance with federal regulations.  Ford's testing resulted in inaccurate fuel economy ratings.  Ford itself has admitted that its U.S. emissions certification process is a cause for concern.

4.    EPA numbers are a vital  tool that enable consumers to compare vehicles when making leasing or purchasing decisions.  Specifically, the EPA fuel economy ratings are one of the most important factors in new-car buyers' purchase decisions.  Ford's  advertising  statements related to its EPA  fuel  economy  ratings materially misrepresented the fuel economy numbers that the required testing would have actually produced.  Ford's misstatements as to the EPA fuel economy ratings are material.

5.    Ford knows that consumers are concerned with rising fuel prices, and Ford markets its inflated fuel economy claims to attempt to entice consumers to acquire Ford vehicles over its competitors.

---

[1] https://www.fueleconomy.gov/feg/how_tested.shtml (last accessed June 24, 2019).

6.      Ford knew or should have known facts indicating the inaccuracies in its promised MPG of the Class Vehicles.  Ford recklessly or consciously disregarded facts that indicated the fuel economy ratings for the Class Vehicles were erroneous and overstated. Ford's warranties, advertising, and other statements about the promised MPG of the Class Vehicles are false and misleading.  Ford has not corrected its misstatements and omissions or disclosed to consumers the true fuel economy ratings of the Class Vehicles.

7.      Through its misrepresentations, Ford induced Plaintiff and Class members to purchase or lease the Class Vehicles, which do not perform as represented.  Plaintiff and Class members paid more for their Class Vehicles than they otherwise would have and have had to pay higher fuel costs than they would have paid had the Class Vehicles performed as advertised. Plaintiff and Class members would not have purchased or leased the Class Vehicles had they known the truth of Defendant's fraudulent scheme.

8.      This action seeks relief for the injuries sustained as the result of the inaccurate testing methods used by Ford to ascertain the fuel economy ratings of its vehicles and Ford's material misstatements regarding those ratings that Ford used in the marketing and sales of Class Vehicles in the United States.

9.      Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers of Ford models with inflated fuel economy ratings for violations of federal and state consumer protection statutes, breach of warranty and breach of contract.

## **PARTIES**

A.      **Plaintiff**

10.      Plaintiff Mark Napier resides at 4 Exeter Place, Cinnaminson, New Jersey 08077.

11.     On or about September 22, 2016, Plaintiff Mark Napier purchased a new 2017 Ford Expedition from Holman Ford Lincoln, an authorized Ford dealership, located in Maple Shade, New Jersey.

12.     The 2017 Ford Expedition was advertised by Ford to receive as much as 19 MPG. Plaintiff has never achieved fuel economy even close to 19 MPG.  Plaintiff has experienced real world MPG below the fuel economy ratings claimed by Ford.  Had the Plaintiff known the truth about Ford's fuel economy, he would not have made the choice to purchase this vehicle.

13.     Specifically, the window sticker on Plaintiff's 2017 Ford Expedition stated that the Class Vehicle's miles per gallon ratings were: 19 MPG highway, 15 MPG city, and 16 MPG combined. The window sticker also stated that the vehicle was covered by Ford's New Vehicle Limited Warranty.  Plaintiff relied on these representations when deciding to purchase his vehicle.

14.     Plaintiff has suffered an ascertainable loss as a result of Ford's omissions and/or misrepresentations above, including but not limited to the diminished value of his Class Vehicle. Had Ford disclosed the true fuel economy ratings to Plaintiff, he would not have bought his vehicle or would have paid less for it.

**B.      Defendant**

15.     Defendant Ford Motor Company is a Delaware corporation with its principal place of business at One American Road in Dearborn, Michigan.  Ford is a citizen of the States of Delaware and of Michigan.

16.     At all times relevant herein, Defendant Ford engaged in the business of designing, manufacturing, marketing, warranting, distributing, selling, and leasing automobiles, including the Class Vehicles, throughout the United States.

## JURISDICTION AND VENUE

17.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because at least one Class member is of diverse citizenship from the Defendant; there are more than 100 Class members; and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Subject-matter jurisdiction also arises under the Magnuson-Moss Warranty Act claims asserted under 15 U.S.C. § 2301, *et seq.*

18.     This Court has personal jurisdiction over Plaintiff because Plaintiff is a United States citizen and submits to the Court's jurisdiction.  This Court has personal jurisdiction over Ford, because it conducted and continues to conduct substantial business in the District and because it has committed the acts and omissions complained of herein in the District, including the marketing, sale and leasing of the Class Vehicles in this District.

19.     Venue as to Defendant is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, and many of Defendant's acts complained of herein occurred within this District, including the marketing, sale and leasing of the Class Vehicles to Plaintiff and Class members in this district.

## FACTUAL ALLEGATIONS

20.     Since the mid-1970s, window stickers containing the vehicle's MPG estimates have been displayed on vehicles pursuant to the Energy Policy and Conservation Act.  The EPA is responsible for providing the fuel economy data that appears on the window sticker.  The EPA/DOT Fuel Economy and Environment window sticker contains MPG estimates that are based on standardized laboratory test procedures to ensure that the MPG estimates are "reliable,

repeatable, and fair across different car models."[2]  This allows the consumer to accurately compare the fuel efficiency among various vehicles. Periodically, the EPA updates its methodology to determine fuel economy to reflect the modernization of vehicles and improving vehicle testing.[3]

21.     In 2017 to better reflect newer more fuel-efficient vehicles, the EPA updated some of the calculations that manufacturers use to determine EPA fuel economy.[4]

22.     Manufacturers are responsible for testing their own vehicles by utilizing the EPA's standardized laboratory test procedures and are required to report the testing results to the EPA.[5] Manufacturers are not required to test every vehicle but only "one representative vehicle— typically a preproduction prototype—for each combination of loaded vehicle weight class, transmission class, and basic engine."[6]

23.     In fact, the EPA only reviews and confirms the results of about 15%-20% of the vehicles with their own testing,[7] leaving the majority of vehicle fuel economy testing and reporting to the honor system of the manufacturers.

24.     Manufacturers estimate MPG with controlled laboratory tests where the vehicles' wheels are placed on a dynamometer ("dyno"), a device that is like a giant treadmill that simulates the driving environment.[8]  The car is run through standardized driving routines on the dyno.  To ensure that the dyno accurately reflects real-world driving conditions, testers calculate a

---

[2] https://nepis.epa.gov/Exe/ZyPDF.cgi/P100IENB.PDF?Dockey=P100IENB.PDF (last accessed June 24, 2019).
[3] https://www.epa.gov/fueleconomy/history-fuel-economy-labeling (last accessed June 24, 2019).
[4] https://www.epa.gov/fueleconomy/basic-information-fuel-economy-labeling (last accessed June 24, 2019).
[5] https://www.fueleconomy.gov/feg/how_tested.shtml (last accessed June 24, 2019).
[6] https://www.fueleconomy.gov/feg/which_tested.shtml (last accessed June 24, 2019).
[7] https://www.fueleconomy.gov/feg/how_tested.shtml (last accessed June 24, 2019).
[8] *Id.*

measurement called "road load" that is used to simulate friction, aerodynamic drag, and tire-related losses.[9]

25.    On February 23, 2015, the EPA sent a guidance letter to car manufacturers to clarify the procedures used in establishing road-load force and dyno settings.  The letter stated, in part, as follows:

> The method a manufacturer elects to use to characterize the road-load force is optional; however, the manufacturer is responsible for the accuracy of the road-load force specification and dynamometer settings. It is also the manufacturer's responsibility to insure (*sic*) that the vehicles it produces conform to the road-load specification reported in the application for certification and used for certification and fuel economy testing.[10]

26.    Ford has consistently promoted the fuel economy of its vehicles.  In fact, Ford boasted the 2019 Ford Ranger's fuel efficiency with an EPA-estimated fuel economy rating of 21 MPG in the city, 26 MPG on the highway, and 23 MPG combined for its two-wheel drive truck.[11] Ford's four-wheel drive Rangers rated 20 MPG city, 24 MPG on the highway, and 22 MPG combined.[12]  "This is best-in-class EPA-estimated city fuel economy rating of any gasoline-powered four-wheel-drive midsize pickup," Ford claimed.[13]  Ford also promotes its vehicles' fuel economy on its website.  On Ford.com, Ford touts the fuel economy of the 2019 Ranger, stating it is the "BEST-IN-CLASS EPA-ESTIMATED GAS MPG."[14]  On Ford.com today, Ford advertises

---

[9] https://www.consumerreports.org/fuel-economy-efficiency/ford-emissions-under-criminal-investigation/ (last accessed June 25, 2019).

[10] https://iaspub.epa.gov/otaqpub/display_file.jsp?docid=34102&flag=1 (last accessed June 24, 2019).

[11] https://www.freep.com/story/money/cars/2018/12/11/ford-ranger-fuel-economy-midsize-trucks/22671 (last accessed June 24, 2019).

[12] *Id.*

[13] *Id.*

[14] https://www.ford.com/trucks/ranger/features/?searchid=1686695161|68389309809|402087311489|&ef_id=CjwKCAjw3azoBRAXEiwA-_64Oj8QnJCk1LlnS37RY-sps-eRj9IRnpfhumx1PWuRyfFojqJUeVN9oBoCv88QAvD_BwE:G:s&s_kwcid=AL!2519!3!336803889107!e!!g!!2019%20ford%20ranger%20fuel%20economy (last accessed June 24, 2019).

that the 2019 Ford Ranger is "THE MOST FUEL EFFICIENT GAS-POWERED MIDSIZE PICKUP IN AMERICA."[15]

27.     These fuel economy ratings also appear on the window sticker of the vehicles, and consumers use them to compare material vehicle qualities to help make informed choices about the cars they buy or lease.

28.     Ford is aware of the importance of fuel economy to consumers and that consumers rely on car manufacturers' advertising campaigns and gas mileage claims when deciding which vehicle to purchase or lease.

29.     On February 21, 2019, Ford filed its Form 10-K for the fiscal year ended December 31, 2018, and made the following disclosure about its emissions certification process:

> Emissions Certification. The Company has become aware of a potential concern involving its U.S. emissions certification process. The potential concern does not involve the use of defeat devices in our products. On February 18, 2019, we voluntarily disclosed this matter to the Environmental Protection Agency, and we will fully cooperate with any inquiries. Because this matter is preliminary, we cannot predict the outcome, and cannot provide assurance that it will not have a material adverse effect on us.

30.     Later that day, Ford issued a press release stating, in part, that "In September, a handful of employees raised a concern through our Speak Up employee reporting channel regarding the analytical modeling that is part of our U.S. fuel economy and emissions compliance process."  The release further stated that Ford had hired an outside firm to investigate the vehicle road load specifications used in Ford's testing of emission and fuel economy and that they would be "evaluating potential changes to our road-load modeling process, including engineering, technical and governance components."

---

[15] https://www.ford.com/trucks/ranger/ (last accessed June 24, 2019).

31.     On the same day, in response to Ford's announcement, the EPA said that information from Ford's investigation is "too incomplete for EPA to reach any conclusions. We take the potential issues seriously and are following up with the company to fully understand the circumstances behind this disclosure."[16]

32.     Ford is no stranger to fuel economy misrepresentation. Ford has faced problems before due to errors in fuel economy claims. In 2013 Ford overstated the fuel economy for its C-Max hybrid model by seven miles per gallon, and in 2014 Ford lowered fuel economy ratings for six other models and offered compensation to customers.[17] Ford is willfully intending that consumers will rely on its advertised MPG estimates and attempts to mask the actual MPG estimates.

## CLASS ACTION ALLEGATIONS

33.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to the provisions of Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclass (collectively, the "Classes"):

### The Nationwide Class

All persons or entities who purchased or leased a Class Vehicle in the United States.

Alternatively, Plaintiff proposes the following state-specific sub-class:

### The New Jersey Class

All persons or entities who purchased or leased a Class Vehicle in New Jersey.

---

[16] https://ca.reuters.com/article/businessNews/idCAKCN1QA2U0-OCABS (last accessed June 24, 2019).
[17] https://www.reuters.com/article/us-autos-ford-emissions/u-s-opens-criminal-probe-into-ford-emissions-certification-idUSKCN1S21BD (last accessed June 24, 2019).

34. Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the Class definition.

35. Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

36. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

37. **Numerosity: Rule 23(a)(1)** - The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes that at least tens of thousands of Class Vehicles were sold. As Class members may be identified through business records regularly maintained by Defendant and its employees and agents, and through the media, the number and identities of Class members can be ascertained. Members of the Class can be notified of the pending action by e-mail, mail, and supplemented by published notice, if necessary.

38. **Commonality and Predominance: Rule 23(a)(2) and 23(b)(3)** - There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual class members. These common legal and factual issues include, but are not limited to:

    a. whether Defendant engaged in the conduct alleged herein;

    b. whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

    c.   whether the Defendant's conduct violates consumer protection statutes and constitutes breach of contract and fraudulent concealment as asserted herein;

    d.   whether Plaintiff and Class members overpaid for their Class Vehicles; and

    e.   whether Plaintiff and Class members are entitled to damages and other monetary relief and, if so, in what amount.

39.    **Typicality: Rule 23(a)(3)** – Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the Defendant's wrongful conduct as described above.

40.    **Adequacy: Rule 23(a)(4))** – The representative Plaintiff will fairly and adequately represent and protect the interests of all Class members, and he has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between the claims of the representative Plaintiff and Class members that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of all Class members.

41.    **Declaratory and Injunctive Relief: Rule 23(b)(2)** - Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate declaratory relief, with respect to each Class as a whole.

42.    **Superiority: Rule 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because questions of law and fact common to the Class predominate over the questions affecting only individual Class members and because a class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's

conduct. Further, it would be virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

43.     The representative Plaintiff contemplates the eventual issuance of notice to the proposed Class members setting forth the subject and nature of the instant action. Upon information and belief, Defendant's own business records and electronic media can be utilized for the contemplated notices. To the extent that any further notices may be required, the representative Plaintiff would contemplate the use of additional media and/or mailings.

## TOLLING OF THE STATUTE OF LIMITATIONS

44.     Any applicable statutes of limitations have been tolled by Ford's knowing and active concealment and misleading actions, as alleged herein. Plaintiff and Class members defined above were kept ignorant of critical information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiff and Class members could not have reasonably discovered that the fuel economy ratings were not accurate until Ford had disclosed this information, which was shortly before this class action litigation was commenced.

45.     Ford is under a continuous duty to disclose to Plaintiff and Class members the true character, quality and nature of the Class Vehicles, and to disclose the truth regarding the fuel

economy ratings.  Ford knowingly, affirmatively, and actively concealed the true fuel economy ratings of the Class Vehicles. Plaintiff and Class members reasonably relied upon Ford's knowing, affirmative, and active concealment.  Based on the foregoing, Ford is estopped from relying on any statutes of limitation as a defense in this action.

46.    Plaintiff and Class members could not have known that the Class Vehicles were marketed, sold, and leased with false fuel economy ratings, as a result of Ford's  fraudulent concealment of the true MPG and EPA fuel economy ratings of the Class Vehicles.  Plaintiff and Class members  did  not  discover, and  could  not  have  discovered, through  the  exercise of reasonable diligence, the  true  nature  of the fuel economy of the Class Vehicles.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **Violations of the Magnuson-Moss Warranty Act**
### **(On Behalf of the Nationwide Class)**

47.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48.    This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a) and (d).

49.    Plaintiff brings  this  Count  individually  and  on  behalf of all Class members.

50.    Defendant is a "supplier" and "warrantor" within the  meaning  of the  Magnuson Moss Warranty Act, 15 U.S.C. § (4)-(5).

51.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

52.    Plaintiff is a "consumer" within the  meaning  of the Magnuson-Moss  Warranty Act, 15 U.S.C. § 2301(3).

53.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an express written or implied warranty.

54.     As described above, Defendant expressly warranted in advertisements that the Class Vehicles experienced fuel economy efficiency.  These express written warranties fall within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

55.     Under 15 U.S.C. § 2301(7), Defendant created implied warranties for the Class Vehicles.

56.     With respect to Class members' purchases or leases of the Class Vehicles, the terms of Ford's express written warranties and implied warranties became part of the basis of the bargain between the parties.

57.     Ford breached these warranties as described in more detail above.  Without limitation, the Class Vehicles experience less MPG than warranted by Ford.

58.     Plaintiff and Class members are in privity with Defendant in that they purchased the Class Vehicles from Defendant or its agents.

59.     It is unnecessary and futile to afford Ford a reasonable opportunity to cure their breach of written warranties.  Ford knew or should have known of the misrepresentations concerning the Class Vehicles' fuel economy ratings at the time of sale or lease of each Class Vehicle but failed to rectify the misrepresentations. Consequently, the remedies available under any informal settlement procedure would be inadequate, and any requirement that Plaintiff or Class members resort to an informal dispute resolution procedure and/or afford Ford a reasonable opportunity to cure its breach of warranties is excused and thus deemed satisfied.

60.     As a direct and proximate result of Ford's breaches of its warranties, Plaintiff and Class members have sustained damages in an amount to be determined at trial.

61.     All jurisdictional prerequisites have been satisfied.

62.     Plaintiff, individually and on behalf of the Nationwide Class, seeks all damages permitted by law, including but not limited to, diminution in the value of their vehicles, in an amount to be proven at trial.

## COUNT II
### Negligent Misrepresentation
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)**

63.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

64.     Plaintiff bring this Count individually and on behalf of all Class members.

65.     Defendant had a duty to provide honest and accurate information to its customers so that customers could make informed decisions on the substantial purchase of automobiles.

66.     Defendant specifically and expressly misrepresented material facts to Plaintiff and Class members, as discussed above.

67.     Defendant knew, or in the exercise of reasonable diligence, should have known, that the ordinary and reasonable consumer would be misled by the Defendant's misleading and deceptive advertisements.

68.     Plaintiff and Class members justifiably relied on Defendant's misrepresentations and have been damaged thereby in an amount to be determined at trial.

## COUNT III
### Common Law Fraud
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)**

69.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

70.     Plaintiff brings this Count individually and on behalf of all Class members.

71.     The misrepresentations, nondisclosure, and/or concealment of material facts made by Defendant to Plaintiff and Class members, as set forth above, were known, or through reasonable care should have been known, by Defendant to be false and material and were intended to mislead Plaintiff and Class members.

72.     Plaintiff and Class members were actually misled and deceived and were induced by Defendant to purchase the Class Vehicles that they would not otherwise have purchased or would have paid substantially less for.

73.     As a result of the Defendant's conduct, Plaintiff and all Class members have been damaged in an amount to be determined at trial.

**COUNT IV**
**Common Law Breach of Implied Warranty**
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)**

74.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75.     Plaintiff brings this Count individually and on behalf of all Class members.

76.     The Class Vehicles are and were at all relevant times "goods."

77.     Ford is and was at all relevant times a "merchant, "seller," and "lessor" with respect to motor vehicles.

78.     Defendant was and is in privity with Plaintiff and Class members by law and/or by fact.  Plaintiff has had sufficient direct dealings with Defendant and/or its authorized dealers, franchisees, representatives, and agents to establish privity of contract.   Defendant's advertisements were aimed at Plaintiff and Class members, and Defendant's warranties were expressly written for the benefit of Plaintiff and Class members as purchasers or lessees of Class Vehicles.

79.     These Class Vehicles, when sold or leased and at all times thereafter, did not conform to the promise or affirmations of fact made by Ford. Specifically, as described above, the Class Vehicles' fuel economy ratings did not conform to the fuel economy representations made by Ford.

80.     As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and all Class members have been damaged in an amount to be determined at trial.

<u>COUNT V</u>

**Common Law Breach of Express Warranty**
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)**

81.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

82.     Plaintiff brings this Count individually and on behalf of all Class members.

83.     As described above, Defendant, in selling the Class Vehicles, expressly warranted in advertisements that the Class Vehicles experienced a certain fuel economy efficiency.

84.     These affirmations and promises were part of the basis of the bargain between the parties.

85.     Defendant breached these express written warranties arising from their advertisements because the fuel economy ratings for their vehicles were false.

86.     As a direct and proximate result of Defendant's breach of express written warranties, Plaintiff and all Class members have been damaged in an amount to be determined at trial.

<u>COUNT VI</u>

**Unjust Enrichment**
**(On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)**

87.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

88.     Plaintiff brings this Count individually and on behalf of all Class members.

89.     Because of its wrongful acts and omissions, Defendant charged a higher price for the Class Vehicles than the Class Vehicles' true value, and Defendant obtained money that rightfully belongs to Plaintiff and the Class members.

90.     Plaintiff and Class members conferred a benefit on Defendant by purchasing or leasing the Class Vehicles.

91.     Defendant had knowledge that this benefit was conferred upon them.

92.     Defendant has been unjustly enriched at the expense of Plaintiff, and its retention of this benefit under the circumstances would be inequitable.

93.     Plaintiff seeks an order requiring Defendant to make restitution to him and all Class members.

### COUNT VII
**Violation of New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.***
**(On Behalf of the New Jersey Sub-Class)**

94.     Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

95.     The New Jersey's Consumer Fraud Act ("NJCFA") protects consumers from "any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J. Stat. Ann. § 56:8-2.

96.     Plaintiff and Class members are consumers who purchased and/or leased the Class Vehicles for personal, family or household use.

97.     Defendant engaged in unlawful conduct by deliberately and knowingly engaging in misrepresentations and false statements regarding the Class Vehicles, in the course of Defendant's business. Specifically, Defendant knew that the Class Vehicles were subject to

defective and fraudulent fuel economy testing methods and overstated the Class Vehicles' MPG fuel economy ratings.

98.    Defendant intended for Plaintiff and all Class members to rely on its omissions regarding the fuel economy efficiency of the Class Vehicles.

99.    Defendant's omissions regarding the fuel economy efficiency of the Class Vehicles, described above, are material facts that a reasonable person would have considered in deciding whether or not to purchase (or to pay the same price for) the Class Vehicles.

100.    As evidenced by Plaintiff and the other Class members' purchases of Class Vehicles, Plaintiff and Class members justifiably acted or relied to their detriment upon Ford's omissions of fact concerning the fuel economy efficiency of the Class Vehicles that resulted in the Class Vehicles not being as fuel efficient as advertised.

101.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by Plaintiff and Class members.  If Ford had disclosed all material information regarding the fuel economy efficiency of the Class Vehicles to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances.  Moreover, in light of Defendant's exclusive knowledge of the fuel-economy efficiency, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

102.    Accordingly, Defendant has engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities that they do not have; representing that the Class Vehicles are of a particular standard and quality

when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive.

103.    Defendant's actions as set forth above occurred in the conduct of trade or commerce.

104.    By engaging in the above-described practice and the actions and omissions herein alleged, Defendant has committed one or more unlawful acts in violation of the NJCFA.

105.    Defendant's conduct caused Plaintiff and Class members to suffer an ascertainable loss. In addition to direct monetary losses, Plaintiff and Class Members have suffered an ascertainable loss in that they received less than what was promised to them by Defendant at the time they purchased and/or leased the subject Class Vehicles. Plaintiff and Class Members will suffer future damages due to the loss in value of the vehicles as a result of the Class Vehicles not being as fuel efficient as advertised. Therefore, Plaintiff and Class members are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees, and costs of suit.

106.    Plaintiff and Class members have suffered an ascertainable loss of monies and pursuant to NJ Stat. § 56:8-19 are entitled to threefold damages.

107.    Unless Defendant is enjoined from continuing to engage in this business practice, Plaintiff and Class members will continue to be injured by Defendant's wrongful actions and conduct. Therefore, Plaintiff and Class members are entitled to injunctive relief.

108.    Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff has served the New Jersey Attorney General with a copy of this Complaint.

## COUNT VIII
### Breach of Contract
### (On Behalf of the Nationwide Class or, Alternatively, the New Jersey Sub-Class)

109.    Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

110.    Defendant has expressly and unambiguously sold the Class Vehicles claiming false and inflated fuel economy ratings as more fully set forth herein.  Plaintiff's and the Class members' purchases of the Defendant's Class Vehicles constitute valid contracts with the Defendant.

111.    The fuel economy ratings of the Class Vehicles as claimed in Defendant's marketing and advertising constitute terms or representations that form the basis of the contract for the Plaintiff and the other Class members with the Defendant.

112.    The Defendant failed to perform as required by the contracts and breached the contracts by delivering the Class Vehicles with markedly less fuel economy than advertised.  As a result of the foregoing, Plaintiff and the Class members are entitled to compensatory damages, plus interest, costs and such additional relief as the Court may deem appropriate or to which Plaintiff and the Class may be entitled.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

1.    For an order certifying this action as a class action;

2.    For an order appointing Plaintiff as representative of the Class and his counsel of record as Class counsel;

3.    For an award of actual, general, special, incidental, statutory, compensatory and consequential damages on claims as allowable and in an amount to be proven at trial;

4.    For an award of exemplary and punitive damages in an amount to be proven at trial;

5.     For attorneys' fees and costs;

6.     For an order enjoining the wrongful conduct alleged herein;

7.     For interest;

8.     For all such equitable relief and remedies as the Court deems just and appropriate, including but not limited to, rescission; restitution; and unjust enrichment;

9.     For injunctive relief ordering Ford to immediately cease fuel economy testing according to its flawed methodology;

10.     For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

**LITE DEPALMA GREENBERG LLC**

Dated: July 2, 2019

_/s/ Joseph J. DePalma_
Joseph J. DePalma
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg @litedepalma.com
scruzhodge@litedepalma.com

**FREED KANNER LONDON
 & MILLEN LLC**
Kimberly A. Justice
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**FREED KANNER LONDON**
**& MILLEN LLC**
Steven A. Kanner
William H. London
Douglas A. Millen
Michael E. Moskovitz
Brian M. Hogan
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
blondon@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
bhogan@fklmlaw.com

**LOCKRIDGE GRINDAL**
**& NAUEN P.L.L.P.**
Karen Hanson Riebel
Brian D. Clark
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com
bdclark@locklaw.com

**CARLSON LYNCH LLP**
Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com

**CARLSON LYNCH LLP**
Gary F. Lynch
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
glynch@carlsonlynch.com

**SAVERI & SAVERI, INC.**
Guido Saveri
R. Alexander Saveri
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
guido@saveri.com
rick@saveri.com

**SPECTOR ROSEMAN**
**& KODROFF. P.C.**
Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
Jeffrey L. Spector
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkattorneys.com
jcorrigan@srkattorneys.com
bcaldes@srkattorneys.com
jspector@srkattorneys.com

**GEYERGOREY LLP**
Bradford L. Geyer
2006 Berwick Drive
Cinnaminson, NJ 08077
Telephone: (856) 607-5708
Bradford.geyer@geyergorey.com

**MCLAFFERTY LAW FIRM, P.C.**
David P. McLafferty
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 940-4000 ext. 12
dmclafferty@mclaffertylaw.com

## LOCAL CIVIL RULE 11.2 CERTIFICATION

Pursuant to Local Civil Rule 11.2, I hereby certify that the matter in controversy is not related to any other action, pending arbitration or administrative proceeding currently pending in any court.

I hereby certify that the following statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**LITE DEPALMA GREENBERG LLC**

Dated: July 2, 2019

_/s/ Joseph J. DePalma_
Joseph J. DePalma
Bruce D. Greenberg
Susana Cruz Hodge
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
bgreenberg @litedepalma.com
scruzhodge@litedepalma.com

**FREED KANNER LONDON**
 **& MILLEN LLC**
Kimberly A. Justice
Jonathan M. Jagher
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 234-6487
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**FREED KANNER LONDON
 & MILLEN LLC**
Steven A. Kanner
William H. London
Douglas A. Millen
Michael E. Moskovitz
Brian M. Hogan
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
blondon@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com
bhogan@fklmlaw.com

**LOCKRIDGE GRINDAL
& NAUEN P.L.L.P.**
Karen Hanson Riebel
Brian D. Clark
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
khriebel@locklaw.com
bdclark@locklaw.com

**CARLSON LYNCH LLP**
Katrina Carroll
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
kcarroll@carlsonlynch.com

**CARLSON LYNCH LLP**
Gary F. Lynch
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
glynch@carlsonlynch.com

**SAVERI & SAVERI, INC.**
Guido Saveri
R. Alexander Saveri
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
guido@saveri.com
rick@saveri.com

**SPECTOR ROSEMAN
& KODROFF. P.C.**
Eugene A. Spector
Jeffrey J. Corrigan
William G. Caldes
Jeffrey L. Spector
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkattorneys.com
jcorrigan@srkattorneys.com
bcaldes@srkattorneys.com
jspector@srkattorneys.com

**GEYERGOREY LLP**
Bradford L. Geyer
2006 Berwick Drive
Cinnaminson, NJ 08077
Telephone: (856) 607-5708
Bradford.geyer@geyergorey.com

**MCLAFFERTY LAW FIRM, P.C.**
David P. McLafferty
923 Fayette Street
Conshohocken, PA 19428
Telephone: (610) 940-4000 ext. 12
dmclafferty@mclaffertylaw.com